UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BLUE JET, INC.,                                      Case No. 16-13037 t11

    Debtor.

## OPINION

Debtor filed an application to employ general bankruptcy counsel, to which the United State's Trustee's office lodged a limited objection. The sole remaining dispute is whether counsel's attempt to obtain an attorney charging lien creates a disqualifying interest under § 327(a).[1] The Court rules that the proposed charging lien is improper for general bankruptcy representation, but might be permissible if counsel was asked to work on discrete litigation to recover money for the estate.

I.    FACTS[2]

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 9, 2016. On the petition date, Debtor filed a motion to employ William F. Davis & Assoc., P.C. ("Counsel") as its general bankruptcy counsel. Debtor proposes to pay Counsel by the hour, as is typical.

---

[1] Unless otherwise noted, section citations are to 11 U.S.C.
[2] The Court took judicial notice of the docket in this case and in the *In re DC Energy, LLC* case, pending in this district, case no. 14-12923. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Pre-petition, Debtor signed a retainer agreement with Counsel. The agreement provides in part:

> The law Firm of WILLIAM F. DAVIS & ASSOC., P.C. specifically reserves a contractual right to enforce an attorney's charging lien against any client's judgment, award, or recovery. The attorney's charging lien, pursuant to this retainer agreement, will take priority over any other set-off of judgment. A trial court, in any preference or set-off action, may allow preference to the charging lien specified in this retainer agreement.

The United States Trustee objected, arguing that the charging lien makes Counsel a secured creditor and disqualifies it from employment because it holds an interest adverse to the estate.

The Court held a preliminary hearing on the dispute. At the hearing, Counsel represented that it would only seek to enforce a charging lien if the case converts to Chapter 7. In such an event, Counsel asserted it would be unfair to pay chapter 7 administrative expenses ahead of its unpaid chapter 11 fees.

Counsel asserted an attorney charging lien in another case in this district, *In re DC Energy, LLC.*, case no. 14-12923. *DC Energy* started as a chapter 11 case and was converted to chapter 7. Counsel was debtor's general bankruptcy counsel during the chapter 11 phase, and in an adversary proceeding. The pre-petition retainer agreement between DC Energy and Counsel included a provision for a charging lien, with language identical to that at issue in this case. When the chapter 7 trustee's counsel filed a fee application in the converted case, Counsel objected, asserting a lien on the bankruptcy estate's liquid assets. In support of its objection Counsel argued:

> 3. Since the Petition Date, Debtor had revenues totaling $343,824.79, from collection of its pre-petition accounts receivable or from post-petition operations.
> . . .
> 4. Debtor's ability to receive revenues was entirely dependent upon Debtor maintaining a continuity of business. In addition to the generation of new business post-petition, it is highly improbable that Debtor's account debtors would have paid the pre-petition amounts due to Debtor had Debtor not maintained a framework of operations and stable management points of contact following the

> Petition Date.
> 5.      By preserving Debtor's framework of operations and management structure, Claimant enabled Debtor to recover the foregoing the $343,824.79 that it collected following the Petition Date. . . .
> . . .
> 20.     Claimant asserts a charging lien on the funds protected, recovered, or defended from the claims of the WAS Plaintiffs. This charging lien is valid under the applicable New Mexico framework.
> 21.     First, Debtor's employment of Claimant-a valid contract between an attorney and a client-was approved by the Court on October 30, 2014. Doc. 27.
> 22.     Second, a definite and specific sum of money was recovered and defended through Claimant's efforts during the pendency of Debtor's chapter 11 bankruptcy. As noted above, it is unlikely that Debtor would have recovered or generated any of the $343,824.79 in revenues it collected following the Petition Date had Claimant not preserved its operational framework and management structure. The funds currently in the Chapter 7 Trustee's trust account for the Debtor are the remainder of this recovery, after court-approved expenses.
> . . .
> 25.     It would be inappropriate to approve the Application, since the Application seeks authorization to disburse funds without accounting for the adequacy of the remaining funds to satisfy Claimant's valid attorney charging lien.

The contested matter in *DC Energy* has not been resolved, and neither party has asked for a hearing.

Given Counsel's position in the *DC Energy* case, the Court finds that Counsel seeks a charging lien that encumbers Debtor's post-petition accounts receivable and cash.

The parties requested the Court rule on the papers presented, and waived an evidentiary hearing. Counsel stated it would waive its right to assert a lien if the Court determines that doing so would disqualify Counsel from employment under § 327(a).

## II.     DISCUSSION

A.      <u>The Requirements of §§ 101(14) and 327(a)</u>.

Section 101(14) provides:

the term disinterested person means a person that –
> (A) is not a creditor, an equity security holder, or an insider; and
> …

> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

Section 327(a) provides:

> Except as otherwise provided in this section, the trustee [or debtor in possession], with the Court's approval, may employ one or more attorneys… that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

"This section creates a two-part requirement for retention of counsel: counsel must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'" *In re Cook*, 223 B.R. 782, 789 (10th Cir. BAP 1998). Courts within the Tenth Circuit define "interest adverse to the estate" as:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under the circumstances that render such a bias against the estate.

*In re Roberts*, 46 B.R. 815 (Bankr. D. Utah. 1985), *quoted in In re Cook*, 223 B.R. at 789 *and In re 7677 East Berry Ave. Associates*, *L.P.*, 419 B.R. 833, 842-43 (Bankr. D. Colo. 2009).

Section 101(14)'s definition of "disinterested person" overlaps with the § 327(a) requirement that counsel not hold or represent an adverse interest. *See In re Martin*, 817 F.2d 175, 179 (1st Cir. 1987) (the requirements are "intertwined" and "imbricated"[3]).

### B. Collateral and Disinterestedness

Can Debtor's counsel obtain, pre-petition, collateral to secure payment of its chapter 11 fees and still qualify for retention under § 327? The answer is a definite maybe.

---

[3] Imbricated means overlapping, as in roof tiles or fish scales. For the sake of convenience, the Court will use "disinterested" to denote all of the § 327(a) requirements.

1. <u>Retainers</u>. Section 328 (Limitation on compensation of professional persons) refers to retainers:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, *including on a retainer*, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

(§ 328(a) (emphasis added)). Based on this language, most courts have held that debtor in possession counsel may obtain a pre-petition retainer and remain disinterested under § 327(a). *See In re Advanced Imaging Technologies, Inc.*, 306 B.R. 677, 682 (Bankr. W.D. Wash. 2003) (attorney with attached and perfected security interest in pre-petition retainer was not disqualified from acting as debtor's counsel); *In re Printcrafters, Inc.,* 233 B.R. 113, 119 (D. Colo. 1999) (pre-petition retainer to secure payment of fees earned post-petition is permitted under § 327(a)). Of course, pre-petition retainers must be disclosed to and approved by the Court as part of the employment process. § 328(a). In addition, post-petition fees must be approved before the counsel can draw on the retainer. *In re Radulovic,* 2006 WL 6810999, at *5 (9th Cir. BAP), citing *C&P Auto Transport, Inc.,* 94 B.R. 682, 689-92 (Bankr. E.D. Cal. 1988).

2. <u>Other Collateral</u>. Courts are more skeptical about other forms of collateral, but most have ruled that there is no *per se* bar. Instead, the Court reviews the proposed collateral on a case by case basis. The leading case is *In re Martin*, cited above.[4] In *Martin* the court of appeals held that a mortgage the debtor granted pre-petition to its counsel to secure payment of chapter 11 fees was not *per se* prohibited by § 327(a). Rather, whether the mortgage disqualified debtor's counsel depended on the facts and circumstances of the case. *See also In re Mall*, 2004

---

[4] Imbricate is not the only unusual word found in *In re Martin*; the opinion also uses the words rescripts, decurtate, asseveration, jejune, and scumbled. Judge Selya either had an extraordinary vocabulary or else was fond of the thesaurus.

WL 2187166 (Bankr. D. Kan.) (rejecting *per se* rule that would prohibit counsel from taking a mortgage as collateral); *In re Watson*, 94 B.R. 111 (Bankr. S.D. Ohio 1988) (rejecting bright-line rule precluding attorney from taking security interest in debtor's personal property, adopting *Martin's* case-by-case analysis, and finding that the security interest at issue disqualified the counsel).[5]

*Martin* outlined a multi-part factor test, used to determine whether a proposed collateral arrangement is permissible. 817 F.2d at 182. The factors were separated and enumerated in *In re Watson*:

> 1. The reasonableness of the arrangement and whether it was negotiated in good faith;
> 2. Whether the security demanded was commensurate with the predictable magnitude and value of the foreseeable services;
> 3. Whether it was a needed means of ensuring the engagement of competent counsel;
> 4. Whether or not there are telltale signs of overreaching;
> 5. The nature and extent of any conflict arising from the taking of a security interest as well as the likelihood that a potential conflict might turn into an actual one;
> 6. The influence the putative conflict may have in subsequent decision making;
> 7. How the matter likely appears to creditors and to other parties in legitimate interest, given the importance of perceptions by the creditor body and the problem at large;
> 8. Whether the existence of the security interest threatens to hinder or to delay the effectuation of a plan;
> 9. Whether the security interest granted is (or could be perceived as) an impediment to reorganization;
> 10. Whether the fundamental fairness of the proceedings might be unduly jeopardized either by the actuality of the arrangement or by the reasonable public perception of it.

---

[5] At least one court disagreed with the notion that DIP counsel can secure its attorney fee claim and remain disinterested. *See In re Escalera*, 171 B.R. 107, 111 (Bankr. E.D. Wash. 1994) (the court rejected *Martin* because "one who holds a lien on property of the estate holds an interest adverse to the estate and is ineligible to be employed under § 327(a)").

94 B.R. at 115. *See also In re Mall*, 2004 WL 2187166, at *4 (same factors, citing *Martin*); *In re Gilmore*, 127 B.R. 406, 408–09 (Bankr. M.D. Tenn. 1991) (cites the *Martin/Watson* factors and states that the court should examine the circumstances of each case to determine if the proposed security is necessary or is overreaching); *In re 7677 East Berry Ave. Associates, L.P.*, 419 B.R. 833, 844 (Bankr. D. Colo. 2009) (adopting case-by-case analysis); *In re Advanced Imaging Techs., Inc.*, 306 B.R. 677, 683 (Bankr. W.D. Wash. 2003) ("This Court has adopted a case-by-case approach to determine whether a security interest held by debtor's counsel in property of the estate to secure future fees constitutes a disqualifying factor for purposes of Section 327(a)"); *In re Shah International, Inc.,* 94 B.R. 136, 138 (Bankr. E.D. Wis. 1988) (cites *Martin* and holds that mortgages to secure fees did not disqualify counsel); *Michael v. Carter (In re Carter)*, 116 B.R. 123 (E.D. Wis. 1990) (counsel who had security interest in debtor's land contract disinterested); *In re Quincy Air Cargo, Inc.,* 155 B.R. 193, 197 (Bankr. C.D. Ill. 1993) (citing and applying the *Martin* factors).

  C. <u>Attorney Charging Liens</u>.

    1. <u>Elements of a charging lien</u>. New Mexico has four requirements for the imposition of an attorney charging lien: (1) a valid contract between the attorney and the client; (2) a judgment, or "fund," that resulted from the attorney's services; (3) clear and unequivocal notice to the appropriate parties that the attorney intends to assert a lien; and (4) and timely notice, i.e., before the proceeds from the judgment have been distributed. *In re Esparsen,* 545 B.R. 330, 335 (Bankr. D.N.M. 2016) (citing *Computer One, Inc. v. Grisham & Lawless,* 144 N.M. 424, 429 (S. Ct. 2008)). Notice of the attorney charging lien must be filed in the same action that gave rise to the judgment. *Id.* The contract is not required to grant or even allude to the charging lien. *Sowder v. Sowder*, 977 P.2d 1034, 1037 (N.M. App. 1999).

2. <u>Whether a charging lien is permissible for work done in the main case</u>. Based on the position it took in the *DC Energy* case, the Court found that Counsel seeks to obtain a charging lien on Debtor's post-petition accounts receivable and cash. As an initial matter, the Court questions whether a charging lien could ever attach to such collateral. The quintessential charging lien arises in a state law suit to recover money, e.g., a tort claim or breach of contract action. In such cases, success results in a specific fund of money, generated by the attorney's efforts. *See Cherpelis v. Cherpelis*, 959 P.2d 973, 975 (N.M. App. 1998) (attorney may recover fees from fund recovered by his efforts). No analogous fund is created by DIP counsel in a chapter 11 case. It is quite a stretch to argue that, by helping Debtor operate post-petition, the accounts receivable and cash are a judgment or "fund" resulting from Counsel's services. *See, e.g., Sowder v. Sowder*, 977 P.2d 1034, 1037 (N.M. App. 1999) (attorney charging lien attaches only to fruit of attorney's skill and labor) (quoting *Glickman v. Scherer*, 566 So.2d 574, 575 (Fla. App. 1990) ("services must… produce a positive judgment or settlement for client, since the lien will attach only to the tangible fruits of services")). *See also Albuquerque Nat. Bank v. Albuquerque Ranch Estates, Inc.*, 687 P.2d 91, 92 (N.M. 1984) (distinguishing between fund generated by client's resources as opposed to attorney's labor).

Furthermore, application of the *Martin/Watson* factors indicates that the proposed charging lien should not be approved:

| Factor | Discussion |
|---|---|
| 1. The reasonableness of the arrangement and whether it was negotiated in good faith. | Weighs against approval. The arrangement is negotiated in good faith. It is not reasonable, however, for Counsel to take the position that its efforts recovered all of Debtor's post-petition liquid assets. |
| 2. Whether the security demanded was commensurate with the predictable magnitude and value of the foreseeable services. | Weighs against approval. Because Counsel takes the position that its charging lien encumbers all of Debtor's post-petition liquid assets, the security demanded is not |

| | |
|---|---|
| | commensurate with the likely magnitude and value of Counsel's services. |
| 3. Whether it was a needed means of ensuring the engagement of competent counsel. | Weighs against approval. It is very uncommon in this jurisdiction for DIP counsel to seek a charging lien to secure payment for their services. |
| 4. Whether or not there are telltale signs of overreaching. | Weighs against approval. A charging lien on all accounts receivable and cash appears to be overreaching. |
| 5. The nature and extent of any conflict arising from the taking of a security interest as well as the likelihood that a potential conflict might turn into an actual one. | Weighs against approval. There is a potential for a conflict of interest; Counsel would have an incentive not to pay administrative expenses because payment would deplete the cash collateral. If there is a cash collateral creditor, furthermore, Counsel would be in competition with it. |
| 6. The influence the putative conflict may have in subsequent decision making. | Weighs against approval. Same analysis as #5 above. |
| 7. How the matter likely appears to creditors and to other parties in legitimate interest, given the importance of perceptions by the creditor body and the problem at large. | Weighs against approval. The appearance cannot be good. Counsel asserting a first lien on all of the estate's liquid post-petition assets seems unfair and overreaching. |
| 8. Whether the existence of the security interest threatens to hinder or to delay the effectuation of a plan. | Weighs in favor of approval. The proposed lien should not hinder or delay effectuation of a plan. |
| 9. Whether the security interest granted is (or could be perceived as) an impediment to reorganization. | Weighs in favor of approval. The proposed lien should not be an impediment to reorganization. |
| 10. Whether the fundamental fairness of the proceedings might be unduly jeopardized either by the actuality of the arrangement or by the reasonable public perception of it. | Weighs against approval. As stated above, the reasonable public perception likely would be that it is unfair for Counsel to have a first lien on all of Debtor's liquid assets. |

Overall, the *Martin/Watson* factors weigh against approving the charging lien for Counsel's work in the main case. *See also In re Grant*, 507 B.R. 306, 310 (Bankr. E.D. Cal. 2014) (assertion of charging lien on estate funds lessens value of estate and creates dispute with estate); *In re Automend, Inc.*, 85 B.R. 173, 177 (Bankr. N.D. Ga. 1988) (security interest in real estate *and* accounts "took a prime bite out of one of the most promising assets of the estate and is an indication of overreaching by its attorneys.").

3. <u>Whether a charging lien might be permissible for work done in an adversary proceeding or contested matter to collect money or recover property</u>. The case may well be altered if Debtor asked counsel to file an adversary proceeding to recover a fraudulent transfer, preferential transfer, or the like, especially if Counsel was approved to pursue the matter on a contingent fee. In such an event, the grant of a charging lien on the recovered funds may be reasonable. The Court will address such an eventuality if and when it arises.

### III. CONCLUSION

The Court cannot approve a charging lien on Debtor's post-petition accounts receivable and cash to secure payment of general bankruptcy counsel fees. The proposed lien does not pass the *Martin/Watson* disinterested test, and likely would be ineffective for lack of an identifiable fund. The Court therefore will approve Counsel's retention under § 327(a) only if the charging lien proposal is waived. The Court is not ruling, however, that a charging lien is impermissible in connection with work done on a specific claim to recover money or estate property. If Counsel is asked to bring such a claim and would like approval of a charging lien in connection therewith, it should file the appropriate motion and disclosures. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 28, 2017

Copies to:

William F. Davis
6709 Academy NE, Ste. A
Albuquerque, NM  87109

Leonard Martinez-Metzgar
P.O. Box 608
Albuquerque, NM  87103